IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,	No. 3:14-cr-00393-HZ

        Plaintiff,	OPINION & ORDER

    v.

CRAIG ALAN OSTRANDER,

        Defendant.

Leah K. Bolstad
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

    Attorneys for Plaintiff

Devon D. Huseby
Office of the Public Defender
15 Newtown St.
Medford, OR 97501

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

This matter comes before the Court on Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)(Compassionate Release), ECF 70. For the reasons that follow, the Court denies Defendant's Motion.

## BACKGROUND

On September 28, 2015, Defendant pled guilty to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). On June 13, 2016, the Court sentenced Defendant to a 190-month term of imprisonment and a five-year term of supervised release.

On September 22, 2020 Defendant filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in which he alleged he suffers from hypertension, type II diabetes, hyperlipidemia, a damaged liver, inflammatory gut issues, and obesity, and asserted that his medical conditions, combined with the pandemic provided extraordinary and compelling reasons to reduce his sentence. On November 20, 2020, the Court denied Defendant's Motion on the basis that Defendant remained a danger to the community.

On July 28, 2023, Defendant filed a second Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Court took Defendant's Motion under advisement on August 27, 2023.

## STANDARDS

A federal district court generally "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Under 18 U.S.C. § 3582(c)(1)(A), Congress provided an exception, commonly known as compassionate release, to reduce a defendant's sentence for "extraordinary and compelling reasons." Under the original statute, only the Director of the Bureau of Prisons ("BOP") could

file a § 3582(c)(1)(A) motion for a sentence reduction on a defendant's behalf. *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021). But with the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5191 (2018), Congress amended § 3582(c)(1)(A) to allow a defendant, after first requesting that the BOP move for a reduction on his or her behalf, to directly move the district court for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A).

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i)    Extraordinary and compelling reasons warrant such a reduction; [. . . ]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

      The United States Sentencing Commission's policy statement identifies categories of extraordinary and compelling reasons, including the defendant's age, medical condition, and "family circumstances." U.S.S.G. § 1B1.13 app. n.1(A)-(C). The Sentencing Commission's policy statement, however, only applies to § 3582(c)(1)(A) motions filed by the BOP Director on behalf of a defendant. *Aruda*, 993 F.3d at 801. On a defendant's direct motion for compassionate release, the policy factors "may inform a district court's discretion . . ., but they are not binding." *Id*. at 802 (citation omitted).

      The defendant seeking a reduction of his sentence bears the burden to establish that the defendant has exhausted his administrative remedies and that extraordinary and compelling reasons exist to warrant a reduction of his or her sentence. *See* 18 U.S.C. § 3582(c)(1)(A); *United*

3 – OPINION & ORDER

*States v. Greenhut*, 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998)).

## DISCUSSION

Defendant requested compassionate release from the warden more than 30 days before he filed his most recent Motion and received no response. Def.'s Mot. at 5, ECF 70. Accordingly, Defendant's Motion is ripe for review. The Government does not dispute that Defendant has exhausted his administrative remedies, but contends Defendant remains a danger to the community and, therefore, his Motion should be denied.

Defendant asserts that his health has seriously deteriorated since his previous Motion to Reduce Sentence and his health condition now constitutes an extraordinary and compelling reason for early release[1] because he is unable to provide himself with self care. Specifically, on February 28, 2022, he suffered a "massive stroke." Plaintiff alleges that since his stroke, he "struggles to walk, cannot communicate his needs and is unable to effectively care for himself or independently carry out activities of daily living." Def.'s Mot. at 1. Defendant alleges that as a result of his stroke he had "partial paralysis of the right-side of his body as well as the development of verbal aphasia[2] and apraxia." *Id.* at 3. Defendant notes that his condition has improved "slightly" in the months since his stroke, but asserts he still struggles to walk and to

---

[1] At the time of his Motion Defendant had served 45 percent of his sentence with a projected release date of April 5, 2029.
[2] Verbal aphasia is a disorder that "impairs the expression and understanding of language as well as reading and writing." Apraxia is the "loss of ability to execute or carry out skilled movement…despite having the physical ability and desire to perform them." Def.'s Mot. at 4 n.1-2.

communicate. In March 2023, medical staff[3] noted Defendant was having "some noncompliance with speech therapy" and was "struggling to say more than around four words," Def.'s Mot., Ex. A at 17. Staff also described a "[s]elf care deficit related to inability to perform AOL's independently due to stroke deficits. Primarily requires help ambulating long distances and housekeeping activities, activities requiring use of two hands." *Id.* Defendant, however, had "made improvements" in his ability to "feed himself, ambulate with walker, dress and shower himself with minimal to no assist from staff." *Id.*

Defendant also asserts the § 3553(a) factors warrant a reduction in his sentence because his current conviction is for a non-violent drug offense; further incarceration will not result in any rehabilitative benefits because he is "now unable to program"; and although he is classified as a "career criminal" and "has had many disciplinary violations in custody, his physical and mental condition has drastically deteriorated," and he "is no longer in the condition he was in when most of these offenses were committed and therefore no longer presents unreasonable risk to the community." Def.'s Mot. at 9. In particular, Defendant "cannot talk, use his right arm, or walk without assistance. He simply will be unable to pose a serious risk to the community." *Id.*

The government does not dispute that Defendant suffered a stroke that affected his health, but asserts that despite his health issues Defendant continues to be noncompliant and willing to engage in disagreements. For example, on October 18, 2022, eight months after his stroke, Defendant was sanctioned for abusing the prison telephone system, disallowed 27 days of good-conduct time, and barred from further telephone use for 90 days. In addition, in February 2023 Defendant got into a verbal and physical altercation with another inmate and was sanctioned for

---

[3] Defendant is currently housed at the Federal Medical Center at Springfield, a dedicated medical facility which affords inmates greater access to specialized care.

assault without serious injury, lost an additional 27 days of good-conduct time, lost email privileges for four months, and received a fine.

Before modifying an imposed term of imprisonment, a Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes by the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, and other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). A district court's "overarching statutory charge . . . is to impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; and to protect the public." *United States v. Lizarraras-Chacon*, 14 F.4th 961, 966 (9th Cir. 2021)(internal quotation and citation omitted).

Although he is only 45 years old, Defendant has a 33-year criminal record. He has been arrested more than a dozen times and has been convicted of multiple crimes involving violence and firearms. For example, in 2002, he struck a woman in the face during an argument at a tavern. In 2004, he assaulted a victim with a firearm. The following year he was convicted of possession of a firearm in furtherance of a drug trafficking crime. Most recently, Defendant was in possession of two loaded firearms when he was arrested in connection with his current conviction. In addition. Defendant has a poor history on probation. As the government noted in its Response to Defendant's first Motion to Reduce Sentence:

> In 1996, [Defendant] violated the terms of his probation. When the court extended his probation, he again violated, and had his probation revoked. In 2001, he once

> again had his probation revoked. In 2004, he violated the terms of a domestic violence protection order. In 2012 and 2013, he had his supervised release revoked. Additionally, defendant has been released on bail, only to fail to appear in court, [] four times. On at least two of those occasions, he was found to have committed additional crimes the very same day he failed to appear in court.

Gov't Resp., ECF 61, at 4 (internal citations omitted). Furthermore, Defendant's inmate disciplinary record details that he has committed 39 violations since 2006, including assault, possession of a deadly weapon, destroying property, threatening bodily harm to staff and other inmates, possessing syringes, insubordination, using cannabis, possessing another inmate's urine while on the way to a drug test, using methamphetamine, interfering with staff, possession of alcohol, using restricted equipment, and fighting. Gov't Att. A, ECF 64. The government notes that 11 of these violations have occurred during his current sentence, which he began serving in 2016.

As the government points out, it does not require any particular physical strength to purchase or distribute drugs, to acquire a firearm, or to fail to comply with terms of supervision. Moreover, Defendant has served less than half of his sentence and he received a sentence below the guidelines. Under similar circumstances courts have denied motions for compassionate release. *See, e.g., United States v. Ruffin,* 978 F.3d 1000, 1008–09 (6th Cir. 2020)(concluding the court did not abuse its discretion when it denied the defendant compassionate release when the defendant had served 10 years of 25-year sentence and suffered from disorder that caused strokes and partial paralysis because the defendant had not served half his sentence, the original sentence included a downward variance, he committed additional offenses while suffering from the same condition, and he had a record of drug and weapons offenses).

In summary, the nature and circumstances of Defendant's underlying offense were significant. He has almost six years remaining on his 190-month sentence. The sentence imposed

by this Court reflects the seriousness of the offenses, affords adequate deterrence, and protects the public from further crimes by Defendant. *See* 18 U.S.C. § 3553(a)(2). Finally, Defendant has not shown that he no longer poses a danger to the community. The Court, therefore, concludes that Defendant has not carried his burden to show that a reduction of his sentence would be consistent with the federal sentencing factors. Accordingly, the Court denies Defendant's Motion to Reduce Sentence.

## CONCLUSION

The Court DENIES Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF 70.

IT IS SO ORDERED.

DATED: October 23, 2023.

*[signature: Marco Hernandez]*

MARCO A. HERNÁNDEZ
United States District Judge

8 – OPINION & ORDER